UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKIVA ISRAEL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RUBY CARTER,<br><br>　　　　　　Defendant. | No.  2:21-cv-1267 DAD KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Introduction

　　　Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  For the reasons stated herein, the undersigned recommends that this action be dismissed based on plaintiff's failure to prosecute.

Background

　　　On May 10, 2023, defendant filed a summary judgment motion.  (ECF No. 77.)  On June 15, 2023, plaintiff filed her first motion for extension of time to file an opposition.  (ECF No. 79.) The grounds of this request were that plaintiff was in "medical distress" and lacked access to necessary legal documents.  (Id.)  On June 21, 2023, the undersigned granted plaintiff a thirty days extension of time to file her opposition.  (ECF No. 80.)

　　　On July 10, 2023, plaintiff filed a request for a copy of her deposition transcript.  (ECF No. 81.)  On July 18, 2023, the undersigned denied plaintiff's request for a copy of her deposition

1

transcript. (ECF No. 83.) The undersigned granted plaintiff thirty days to file her opposition and ordered that no further requests for extension of time would be granted. (Id.)

On August 21, 2023, plaintiff filed a motion for a four to five months extension of time to file her opposition on the grounds that she was placed in administrative segregation ("ad seg") without her legal property and that she required mental health treatment. (ECF No. 86.) On August 24, 2023, the undersigned granted plaintiff a forty-five days extension of time to file her opposition. (ECF No. 87.)

On September 18, 2023, plaintiff filed a motion for relief. (ECF No. 88.) In this motion, plaintiff stated that on September 1, 2023, she was notified that she would remain in solitary confinement and be transferred. (Id.) Plaintiff stated that she would not have access to her relevant legal property until a change in her emergency program or until her transfer was complete. (Id.)

On September 28, 2023, the undersigned construed plaintiff's motion for relief filed September 18, 2023, as a motion for extension of time to file her opposition. (ECF No. 90.) The undersigned granted plaintiff thirty days to file her opposition. (Id.) The undersigned ordered that if plaintiff did not have access to her legal property within that time, she shall notify the court. (Id.)

On September 28, 2023, court records were updated to reflect plaintiff's new address at Salinas Valley State Prison ("SVSP").

On October 16, 2023, plaintiff filed a motion for administrative relief. (ECF No. 91.) Plaintiff requested that the court order the SVSP Warden to grant her immediate access to her excess legal property lodged in Receiving and Release. (Id.) Plaintiff alleged that her inability to access her excess legal property lodged in Receiving and Release was "profoundly prejudicial to plaintiff's interests, right and ability to prosecute this case fairly." (Id.)

On October 19, 2023, the undersigned ordered defendant to file a status report within ten days addressing plaintiff's access to her excess legal property, related to the instant action, allegedly stored in Receiving and Release. (ECF No. 92.)

////

On October 26, 2023, defendant filed a response to the October 19, 2023 order. (ECF No. 93.) Defendant's response stated, in part, that defense counsel was informed that, on October 18, 2023, the Receiving and Release Department received a telephone request to allow plaintiff to access her excess legal work. (Id. at 3.) On October 20, 2023, at approximately 1215 hours, plaintiff was transported to Receiving and Release and gained access to all eleven boxes stored on her behalf. (Id.)

On October 31, 2023, the undersigned issued an order finding that, based on defendant's October 26, 2023 response, plaintiff accessed her stored legal property on October 20, 2023. (ECF No. 94.) The undersigned also described, in detail, the procedures by which plaintiff could again obtain access to her stored legal property. (Id.) The undersigned observed that the California Code of Regulations contains procedures for stored legal property. (Id. at 2.) Under California Code of Regulations Title 15, § 3190(b), (f), inmates may keep within their cells six cubic feet of allowable personal and religious property. (Id.) California Code of Regulations Title 15, § 3161 addresses legal property:

> Inmate-owned legal materials/documents, law books and papers shall be limited to the availability of space authorized by section 3190(b) for personal property in the inmate's quarters/living area, except as specified in this section. Inmates may possess up to one cubic foot of legal materials/documents related to their active cases, in excess of the six cubic feet allowable property in their assigned quarters/living area. Legal materials/documents, law books and papers in excess of this limitation shall be disposed of pursuant to section 3191(c). Inmates may request the institution/facility store excess legal materials/documents related to their active case(s) when such materials/documents exceed this one cubic foot additional allowance. Inmate-owned law books in excess of the additional allowance shall not be stored by the institution/facility.

(Id., citing Cal. Code of Regs. Title 15, § 3161.)

The undersigned observed that in the October 26, 2023 response, defendant stated that SVSP policy requires inmates to file a written request for access to property held in Receiving and Release. (Id. at 3.) Defendant stated that inmates may submit requests for access to their property Monday through Friday from 8:00 a.m. to 5:00 p.m. (Id.) Once correctional officers are able to transport inmates to the Receiving and Release Department and staff are able to monitor inmates, the inmate may review their documents. (Id.)

3

In the October 31, 2023 order, the undersigned denied as moot plaintiff's October 16, 2023 motion for an order directing the SVSP Warden to grant her immediate access to her stored legal property. (Id.) The undersigned granted plaintiff thirty days to file her opposition to defendant's summary judgment motion. (Id.) The undersigned ordered that no further requests for extension of time to file an opposition would be granted and that failure to file an opposition would result in a recommendation of dismissal of this action for lack of prosecution. (Id.)

Thirty days passed from October 31, 2023, and plaintiff did not file her opposition. However, on November 3, 2023, plaintiff filed a status report. (ECF No. 95.) The proof of service for this status report is dated October 31, 2023. (Id. at 4.) In the status report, plaintiff states that on October 20, 2023, plaintiff was given 20 minutes to review "some 9,000 documents in her legal property…" (Id. at 1.) Plaintiff alleges that SVSP denies her meaningful access to her legal property "by delayed and arbitrary access schedules to that property …it is sheer whim on part of R & R staff to get plaintiff to R & R." (Id. at 2.) Plaintiff requests a forty-five days extension of time to contact her state senator and family "to pressure requested access." (Id.)

On November 22, 2023, defendant filed a response to plaintiff's November 3, 2023 pleading. (ECF No. 96.) Attached to defendant's response is the declaration of SVSP Correctional Officer D. Cruz. (ECF No. 96-1.) Officer Cruz states that on October 18, 2023, at approximately 12:20 p.m., he escorted plaintiff to review her legal property at Receiving and Release.[1] (Id.) Officer Cruz states that approximately thirty minutes later, plaintiff stated she completed her review and obtained several documents from storage. (Id.) Officer Cruz states that plaintiff taped approximately five boxes shut and he returned plaintiff to her cell at approximately 1:30 p.m. (Id.)

In the November 22, 2023 response, defendant argues that plaintiff's November 3, 2023 status report does not specify how or when SVSP restricted or prohibited her access to her

---

[1] In his declaration, Officer Cruz mistakenly states that he escorted plaintiff on October 18, 2020. (Id.) Defendant's status report filed October 26, 2023 states that plaintiff received access to her stored legal property on October 20, 2023. (ECF No. 93.) While defendant provided two different dates when plaintiff accessed her stored legal property, i.e., October 18, 2023 and October 20, 2023, it is clear that plaintiff had access to her stored legal property on one of these dates.

4

property. (ECF No. 96.) Defendant also argues that plaintiff does not explain any efforts she made to gain additional access to her documents. (Id.)

On December 6, 2023, plaintiff filed a pleading titled "Plaintiff's Competence in Dispute Due to Brain Trauma Following Assault." (ECF No. 97.) Plaintiff alleges that she suffered brain trauma following an attempted sexual assault on October 21, 2023. (Id. at 1.) Plaintiff alleges that doctors confirmed that plaintiff suffered blood loss, loss of consciousness, great bodily injury, etc. (Id.)

Attached to plaintiff's December 6, 2023 pleading is a medical record from the Natividad Hospital Emergency Department dated October 21, 2023. (Id. at 2.) This record states that plaintiff was brought to the hospital for evaluation of physical and sexual assault. (Id.) Plaintiff complained of head, face, neck and possible anal pain. (Id.) Plaintiff reported that she lost consciousness for an unknown amount of time after being punched, kicked and having her head stomped on. (Id.) Plaintiff stated that she had scratches to her abdomen and rated her pain at 10/10. (Id.)

A CT scan of plaintiff's head was performed at the hospital. (Id. at 3.) The results of the CT scan showed a normal CT brain with no hemorrhage, no significant white matter disease and no edema. (Id. at 4.) A CT scan of plaintiff's cervical spine was performed. (Id.) The results of the CT scan of plaintiff's cervical spine showed no acute fracture or subluxation. (Id.) The report also states that plaintiff had some evidence of facial trauma and that plaintiff was vitally stable. (Id.) X-rays of plaintiff's chest and pelvis were negative. (Id.) Plaintiff declined an examination of her buttocks and anus. (Id. at 5.) The report described the differential diagnosis as blunt traumatic injuries to head, cervical spine, chest abdomen and pelvis, sexual assault, sexual transmitted infection. (Id.) The report describes plaintiff's condition as stable and states that she was medically cleared to return to prison (Id)

////
////
////
////

Discussion

*Legal Standard*

The Local Rules, corresponding with Federal Rule of Civil Procedure 11, provide, "[f]ailure of counsel or of a party to comply with ... any order of the Court may be grounds for the imposition by the Court of any and all sanctions ... within the inherent power of the Court." Local Rule 110. "District courts have inherent power to control their dockets" and, in exercising that power, may impose sanctions, including dismissal of an action. Thompson v. Housing Auth., City of Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action based on a party's failure to prosecute an action, obey a court order, or comply with local rules. See, e.g., Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with a court order to amend a complaint); Malone v. U.S. Postal Service, 833 F.2d 128, 130-31 (9th Cir. 1987) (dismissal for failure to comply with a court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

*Analysis*

The undersigned first considers whether the public's interest in expeditious resolution of litigation weighs in favor of dismissal.

Despite having been granted numerous extensions of time, plaintiff failed to file her opposition to defendant's summary judgment motion. Thirty days passed from the October 31 2023 order and plaintiff did not file her opposition. Plaintiff had access to her stored legal property on or around October 20, 2023. In addition, the October 31, 2023 order advised plaintiff of the procedures for obtaining access to her stored legal property.

The undersigned agrees with defendant that in plaintiff's pleading filed November 3, 2023, plaintiff does not specify how or when SVSP prison officials restricted or prohibited her

access to her property. The undersigned also agrees with defendant that plaintiff does not explain any efforts she made to gain additional access to her documents. Officer Cruz's declaration also calls into question plaintiff's claim that she was not granted adequate time to review her stored legal property on October 20, 2023.

The undersigned carefully reviewed the medical records attached to plaintiff's December 6, 2023 pleading. These records indicate that on October 21, 2023, plaintiff was examined at the Natividad Hospital Emergency Department following an alleged sexual assault. These records do not support plaintiff's claim in her December 6, 2023 pleading that the injuries she suffered during the alleged assault rendered her incompetent to prosecute this action. The records do not support plaintiff's claim that she suffered brain trauma following the alleged assault.

The undersigned is concerned by plaintiff's claim that she was sexually assaulted on October 21, 2023. The undersigned is sympathetic to plaintiff based on the trauma she suffered as a result of the alleged assault. However, the undersigned observes that plaintiff did not mention the October 21, 2023 assault in the status report she served on October 31, 2023. If the alleged assault impacted plaintiff's ability to prepare her opposition, the undersigned expects that plaintiff would have brought the assault to the court's attention in the status report served on October 31, 2023.

For the reasons discussed above, the undersigned finds that plaintiff's claim that the injuries she suffered as a result of the alleged October 21, 2023 sexual assault prevent her from preparing her opposition is not well supported.

Based on the record discussed above, the undersigned finds that the public's interest in expeditious resolution of litigation weighs in favor of dismissal. Based on the record discussed above, the undersigned also finds that the second factor—the court's need to manage its own docket—weighs in favor of dismissal.

The undersigned finds that the third factor weighs in favor of dismissal because the presumption of injury arises from the occurrences of unreasonable delay in prosecuting an action. Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976). Here, defendant filed the summary judgment motion over six months ago. Despite having been granted several extensions

of time, plaintiff failed to file her opposition. As discussed above, plaintiff's pleading filed November 3, 2023 alleging inadequate access to her stored legal property is not well supported. Plaintiff's claim that the October 21, 2023 assault rendered her incompetent and unable to prepare her opposition is also not well supported. Based on these circumstances, plaintiff's failure to file an opposition amounts to an unreasonable delay in prosecuting this case resulting in a presumption of injury. Accordingly, the third factor—risk of prejudice to defendant—also weighs in favor of dismissal.

The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." In re Phenlypropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted). By failing to file her opposition to defendant's summary judgment motion, plaintiff impedes the progress on this case. Thus, the fourth factor—the public policy favoring disposition of cases on their merits—weighs in favor of dismissal.

Finally, the undersigned's warning to plaintiff in the October 31, 2023 order that her failure to file an opposition would result in dismissal of this action satisfies the "considerations of the alternatives" requirement. Ferdik, 963 F.2d at 1262. Therefore, the fifth factor—the availability of less drastic sanctions—also weighs in favor of dismissal.

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for plaintiff's failure to prosecute.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 11, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ls1267.sj